UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TARI M. SQUIRES,

       Plaintiff,

 v.             **DECISION AND ORDER**
                    13-CV-861S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

   1.  In this action, Plaintiff Tari Squires challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

   2.  Squires first applied for Disability Insurance Benefits ("DIB") under Title II of the Act on September 7, 2006, claiming she had been unable to work due to disability since March 11, 2006. (R. 155-57.)[1] The application was disapproved, and Squires did not appeal that decision. (R. 23, 48-51, 91.) She again filed for DIB on June 1, 2008, alleging she had been unable to work since March 12, 2006 due to rheumatoid arthritis (RA), a hip replacement, and osteoarthritis. (R. 62-70, 201, 206.) The application was denied on August 11, 2008. (R. 92, 108-111.) Squires then requested a hearing, which was held before ALJ Nancy Gregg Pasiecznik on November 12, 2010. (R. 52-90.) Squires was represented by counsel at the hearing, at which she appeared in person and testified. (Id.)

---

[1] Citations to the administrative record are designated as "R."

3.      The ALJ considered her DIB application *de novo* and, on July 29, 2011, issued a written decision finding Squires was not disabled under the Act. (R. 23-42.) The Appeals Council denied Squires' request for review on June 28, 2013. This civil action, commenced on August 27, 2013, challenges the Commissioner's final decision.[2]

4.      On January 27, 2014 and March 21, 2014, respectively, Squires and the Commissioner each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8 and 13.) The motions were deemed fully briefed as of May 8, 2014, at which time this Court took the matter under advisement.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Squires v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's July 29, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.    Applying the sequential evaluation in the instant case, the ALJ found: (1) Squires had not engaged in substantial gainful activity since December 28, 2006[3] (R. 28); (2) her history of release of the A1 pulley on her right long finger and left index finger, cyclic citrulline pepti (CCP) positive/rheumatoid factor negative rheumatoid arthritis with a myofascial component, residuals status post right total hip replacement with prosthesis in 2004, underweight status, and nicotine addiction were severe

---

[3] The determination on Squires' prior DIB application was binding through December 27, 2006.

4

impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 29); (4) Squires had the residual functional capacity ("RFC") to perform light work with certain specified limitations (R. 31-32); and (5) jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R. 42).

11. Squires contends the ALJ did not properly assess her subjective complaints, the RFC determination is not supported by substantial evidence, and the ALJ did not fully develop the record with regard to her symptoms of pain and fatigue.

12. A claimant's testimony regarding pain and functional limitations is "entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 56 (2d Cir. 1992) (finding claimant's allegations of persistent, severe pain were consistent with objective medical evidence of a severe disc injury). The ALJ, however, "is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Montaldo v. Astrue, No. 10-CV-6163, 2012 U.S. Dist. LEXIS 35250, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012) (citation and internal quotation marks omitted). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009). If the ALJ's findings are supported by substantial evidence, "the court must uphold the ALJ's

decision to discount a claimant's subjective complaints." Aponte v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

> The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged.
> . . . .
> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Rockwood, 614 F. Supp. 2d at 271 (internal citations and quotation marks omitted).

13.   Here, the ALJ acknowledged that Squires' medically determinable impairments could reasonably be expected to cause some degree of the symptoms she described, but found that her statements concerning the intensity, persistence and limiting effects of her symptoms "are in excess of what may reasonably be expected" based on the objective medical evidence, including clinical examinations and diagnostic test findings. (R. 35.)

Having reviewed the record, the Court is satisfied that the ALJ applied the proper legal standard in analyzing Squires' complaints. She reviewed and summarized Squires' activities of daily living, her statements regarding symptoms and limitations made at the

hearing and to treating sources, treatment records, examination findings, test results, and medications and their effectiveness. (R. 32-40.) Furthermore, the Court concludes that substantial evidence supports the ALJ's determination that Squires' complaints of pain and limitations are not entirely credible in light of medical evidence discussed below.

14.     Squires' next arguments relate to the ALJ's finding that she has the capacity to perform light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). The ALJ determined that Squires could stand/walk for about six hours total in an eight-hour workday, with normal breaks, and sit for two hours at a time and eight hours total in an eight-hour workday, but should avoid repetitive above-shoulder lifting/reaching and concentrated exposure to extremes of cold temperatures, and is mildly limited with regard to responding/working appropriately in high stress environments. (R. 31-32.).

15.     Squires contends the RFC is flawed because it is not consistent with her testimony regarding pain and limitations in standing/walking, sitting, and using her hands. As noted previously, the ALJ considered her statements regarding the intensity, persistence, and limiting effects of her symptoms and found them not entirely credible in light of the medical record. Because the Court already has reviewed the ALJ's credibility assessment and found it is supported by substantial evidence, remand on this basis is unwarranted.

Squires next maintains the RFC is inconsistent with the medical reports from Dr. Van De Wall's office. Dr. Van De Wall was Squires' treating rheumatologist, although she most often was examined by Josephine Raab, ANPC, at Dr. Van De Wall's office. Squires points to portions of Van De Wall's and Raab's records that memorialize her subjective complaints of pain and fatigue, and she faults the ALJ for latching on to her largely normal test results while giving little consideration to her repeated complaints of pain, limited range of motion, and functional limitations. (Docket No. 8-1 at 17-18.) In short, this is a further challenge to the ALJ's credibility assessment and requires no further discussion.

16.   To the extent Squires suggests the medical records do not support an RFC for light work, with limitations, the Court disagrees. In arriving at the RFC determination, the ALJ gave some weight to the opinion of a consultative examiner, but gave "greater weight to the opinions of the claimant's treating rheumatologist, Dr. James Van De Wall, and to his assistant, Josephine Raab, ANPC, based on their treatment relationship with the claimant." (R. 38.) Dr. Van De Wall characterized Squires' rheumatoid arthritis diagnosis as questionable, noting the various factors that suggested or, conversely, did not support the diagnosis, and "the marginal nature of her symptoms." (R. 313-14, 465-66.) Nevertheless, he and Raab treated Squire for RA based on the symptomology that did exist, including morning stiffness and gel phenomena.  Their examinations for other RA symptoms, from November 2006 through March 2010, were consistent and largely unremarkable. For example, there was no evidence of active synovitis through the MCPs, DIPs, or PIPs (R. 305, 315, 318, 435, 440, 466, 467, 476, 480) no limitation in range of motion of the hands, wrists, elbows,

and/or shoulders (R. 305, 315, 435, 440, 467, 476, 480) no Raynaud's phenomenon (R. 315, 318, 467, 473, 476, 480), occasional crepitus with flexion and extension of both knees, but no effusion or increase in temperature (R. 305, 316, 317, 435, 440, 466, 467, 476, 480), and some tenderness of the feet at MTP joints (R. 305, 317, 318, 466, 467, 476, 480). Xrays and MRIs of both hands were unremarkable. (R. 35, 38, see R. 286, 301, 333, 465.) Squires reported significant improvement with treatment. In January 2009, she stated that her morning stiffness had lessened to 15 minutes, as opposed to hours, she had realized an improvement in symptoms of at least 80 percent, and she felt very fatigued only on the day after she took her weekly medication. (R. 467.)

Examination findings from Lionel R. John Health Center, Squires' primary care provider, also were largely unremarkable and consistent over time. Though Squires did report joint discomfort on some visits, musculoskeletal examinations generally revealed normal gait and station, normal range of motion and strength in the extremities, and no joint enlargement or tenderness. (R. 343-74.) The ALJ's conclusion that Squires' RA "has not resulted in clinical examination findings or diagnostic test findings that indicate she has been having significant functional limitations from this impairment" (R. 35) finds ample support in the record.

17. Moving on from her alleged exertional limitations, Squires urges that the ALJ should have considered the impact of her reported fatigue on her ability to function in a work setting. Citing Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994), Squires contends that fatigue is a recognized nonexertional impairment the ALJ should have considered more fully. While the medical records do reflect Squires' subjective complaints of fatigue, no physician diagnosed Squires with chronic fatigue syndrome

9

(CFS), distinguishing this case from <u>Rose</u>. Absent a medical diagnosis, the only determination to be made was one of credibility, and that determination has been reviewed and found to be supported by substantial evidence.

18. Finally, Squires maintains the ALJ committed legal error because she did not attempt to obtain an opinion statement from Dr. Van De Wall before ruling on Squires' abilities and limitations. (Docket No. 8-1 at 21-25.)

19. The Commissioner has a responsibility to make every reasonable effort to get medical reports from a claimant's medical sources. "Every reasonable effort" is defined as making an initial and one follow up request to the medical source. 20 C.F.R. § 404.1412(d). That was done here. The record shows the Commissioner made both an initial and a follow up request to Dr. Van De Wall for medical records and a medical source statement (Form 3883). (R. 335.) The medical records that were received from the doctor and Squires' counsel appear complete, but the Commissioner did not receive a medical source statement addressing Squires' work-related functional abilities.

> The regulations in effect when the ALJ issued her decision provided:
>
> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision . . . [but] we may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e) (2011)[4]. Assuming, for purposes of this argument, that the evidence received from Dr. Van De Wall was inadequate to determine whether Squires was disabled, the Commissioner again fulfilled her duty. The regulations state that

---

[4] Effective March 26, 2012, the Commissioner amended § 404.1512, removing paragraph (e) from the regulations. 77 FR 10651, 10655.

where necessary information cannot be obtained from a treating source, the Commissioner will order a consultative examination. § 404.1512(f) (2011). In this case, Squires was seen by consultative examiner, Dr. Toor (R. 401-405), whose opinion was fully considered and given some weight. At the hearing, the ALJ further sought to establish the completeness of the record. In response, Squires' counsel stated that the ALJ had all relevant medical evidence, acknowledged that no medical source statement was received from Dr. Van De Wall, and identified Dr. Van De Wall's treatment records as the best evidence of Squire's limitations. (R. 56, 88.) No request was made to leave the record open to allow for the submission of additional medical reports.

Because there is ample evidence that the Commissioner fulfilled her responsibility to develop the record, remand is unwarranted on this basis, as well.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: August 17, 2014
      Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                        United States District Court